**IN THE COURT OF APPEALS OF IOWA**

No. 16-1376
Filed May 3, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DERRICK ALAN MOORE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, James D. Coil, Judge, (motion to suppress) and Nathan A. Callahan, District Associate Judge (trial and sentencing).

        Derrick Moore appeals his conviction for carrying weapons, alleging he was subjected to an unconstitutional stop and frisk.  **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Brenda J. Gohr, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Richard J. Bennett, Assistant Attorney General, for appellee.

        Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

Derrick Moore appeals his conviction for carrying weapons, a serious misdemeanor, in violation of Iowa Code section 724.4(3) (2015). Moore challenges the district court's denial of his motion to suppress, alleging he was subjected to a stop and frisk in violation of the Fourth Amendment of the United States Constitution and article 1, section 8 of the Iowa Constitution. We affirm.

## I.      Background Facts

On August 31, 2015, a 911 call was placed by a citizen informant around 8:20 a.m. The citizen identified herself and said "there [wa]s an older guy walking down the street" and it "look[ed] like he had a sharp knife hanging out the back of his pocket."[1] Two officers responded and found Moore, who matched the informant's description. At that time, the officers were unable to see a knife on Moore's person. Moore was walking within a few blocks[2] of a school as children were on their way to school, which both officers testified caused them concern. One officer testified they asked Moore if they could search his person and Moore refused consent. When one officer informed Moore of the tip they had received and that he was going to search Moore's person, Moore told the officers he had a knife in his back pocket. The officer searched Moore and found the knife Moore had identified; the knife had a blade over six inches long. The officers testified

---

[1] The citizen informant also stated the man she had seen had a short haircut, blondish-red hair, was in his mid-thirties, and was wearing a blue shirt. She stated he was walking westward toward nearby schools. At the hearing, defense counsel noted the police had not talked to the informant, did not know she had given her identity, and did not know the entire description she had provided. The district court determined the information known by the dispatcher was imputed to the other officers. Moore does not dispute the officers' knowledge on appeal.

[2] One officer testified Moore was within a "four-to-six-block range."

the pat down was based upon the nature of the call, concern for the children in the area, and concern for officer safety.

## II.     Standard and Scope of Review

Because Moore claims the district court violated his constitutional rights in denying his motion to suppress, our review is de novo.  *See State v. Coleman*, 890 N.W.2d 284, 286 (Iowa 2017).  "We independently evaluate the totality of the circumstances found in the record, including the evidence introduced at both the suppression hearing and at trial."  *State v. Gaskins*, 866 N.W.2d 1, 5 (Iowa 2015) (quoting *State v. Vance*, 790 N.W.2d 775, 780 (Iowa 2010)).

## III.    Analysis

The U.S. Constitution and the Iowa Constitution both grant protections against unreasonable searches and seizures.  *See* U.S. Const. amend. IV; Iowa Const. art. I, sec. 8.  "We follow an independent approach in the application of our state constitution."  *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015). "However, when a party does not argue an independent approach, 'we ordinarily apply the substantive federal standards but reserve the right to apply the standard in a fashion different from federal precedent.'"  *Id.* (quoting *State v. Tyler*, 830 N.W.2d 288, 291–92 (Iowa 2013)).

"Searches conducted without a warrant are per se unreasonable, 'subject only to a few specifically established and well-delineated exceptions.'"  *State v. Watts*, 801 N.W.2d 845, 850 (Iowa 2011) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  One such exception exists when an "officer has a reasonable suspicion supported by articulable facts that criminal activity may be

afoot." *State v. Kooima*, 833 N.W.2d 202, 206 (Iowa 2013) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *see also Terry v. Ohio*, 392 U.S. 1, 30 (1968).

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Kooima*, 833 N.W.2d at 206 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). We review the acts of the officer under an objective standard, asking "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002) (citation omitted). We determine the existence of reasonable suspicion "in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time the decision to stop is made." *Id.* at 642.

On appeal, Moore claims there was no reasonable articulable suspicion that a criminal act had or was occurring, as the officers observed no criminal activity, Moore was not acting in a suspicious manner or making threatening or unusual movements, there was no urgency or immediacy that required officer intervention, and the call itself reported no criminal activity as the citizen informant stated the knife was not concealed. Moore concludes the officers should have monitored him to see if he engaged in illegal activity before stopping and frisking him.

Here, the police had a disclosed informant who identified where she saw Moore, described Moore, described the location of the weapon, and identified

where she was driving when she saw the weapon. *See Florida v. J.L.*, 529 U.S. 266, 270 (2000) (contrasting the "tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated" with "a call made from an unknown location by an unknown caller"). This is not a situation where "[a]ll the police had to go on . . . was the bare report of an unknown, unaccountable informant who neither explained how [s]he knew about the [weapon] nor supplied any basis for believing [s]he had inside information about [the defendant]." *Id.* at 271.

Iowa courts have "adopted the position that information imparted by a citizen informant is generally reliable." *State v. Niehaus*, 452 N.W.2d 184, 189 (Iowa 1990); *see also State v. Jackson*, No. 09-1130, 2010 WL 2090845, at *2 (Iowa Ct. App. May 26, 2010). "No evidence was presented in this case to rebut that presumption." *Jackson*, 2010 WL 2090845, at *2. And reasonable suspicion does not "necessarily require[] an accurate prediction of future events or independent observations by the officer of inculpatory conduct." *State v. Walshire*, 634 N.W.2d 625, 627 (Iowa 2001).

The officers had a report from an identified citizen informant that a man was walking down the street with a sharp knife tucked partially into the back pocket of his pants. The officers were provided a location and description of that man from the informant that enabled them to find Moore. Moore was found within a few blocks of schools during a time of day when children were on their way to those schools. When the police officers arrived, they were unable to see the weapon, leading to the concern the reported weapon was concealed from their view. "The principal function of an investigatory stop is to resolve the

ambiguity as to whether criminal activity is afoot."  *Vance*, 790 N.W.2d at 780 (citation omitted).  It does not require that the officers know with certainty a crime is being committed, as "reasonable suspicion may support an investigatory stop that ultimately reveals wholly lawful conduct."  *Id.*  We determine, in the totality of the circumstances, a person of reasonable caution would believe it necessary to determine whether criminal activity was in the process of being carried out.[3]  We, therefore, affirm the district court's denial of Moore's motion to suppress.  *See State v. Markus*, 478 N.W.2d 405, 408-09 (Iowa Ct. App. 1991).

**AFFIRMED.**

---

[3] We note the court in *Walshire* distinguished "illegality open to public observation" from "possessory offense[s]."  634 N.W.2d at 627-28 (citation omitted).  However, unlike in *J.L.*, where there was no explanation as to how the anonymous informant knew the defendant had a gun, *see* 529 U.S. at 268, the informant here stated she saw the knife sticking out of Moore's back pocket.  *See Walshire*, 634 N.W.2d at 628 ("No intimate or confidential relationship was required to support the accuracy of the observation.  The caller simply reported a contemporaneous observation of criminal activity taking place in his line of sight." (citation omitted)).  Further, that the knife was partially viewable to the informant from behind does not prevent the knife from being concealed from persons in front of Moore, as it was concealed from the police officers.  *See generally State v. Morris*, No. 10-2104, 2011 WL 5877011, at *2 (Iowa Ct. App. Nov. 23, 2011) ("[The defendant] argues the knife was not concealed and points to a witness located behind him who was aware [the defendant] had a knife.  [The defendant] approached [the victim] with the knife hidden behind his back and the knife was not discernible to [the victim] by ordinary observation.  While someone behind [the defendant] may have been able to view the knife, this does not negate the fact that [the defendant] concealed the knife as he approached [the victim]." (citation omitted)).